UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Amon Sylvester,               :
          Plaintiff,          :
                              :
          v.                  :     File No. 1:08-CV-88
                              :
William Sorrell, et al.,      :
          Defendants.         :

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 19, 20, 25, 26, 28, 34, 35, 39, 40 and 41)

Plaintiff Amon Sylvester, proceeding *pro se*, brings
this action claiming that he was wrongfully dismissed from a
domestic abuse rehabilitation program.  Because satisfactory
participation in the program was a condition of probation,
his probation was revoked.  Sylvester further alleges that
after he was returned to prison, he was harassed by prison
personnel.  He brings his claims under the First, Eighth,
and Fourteenth Amendments, claiming retaliation,
mistreatment, and denial of due process.

The defendants in the case are Vermont's Attorney
General; supervisors within the Vermont Department of
Corrections ("DOC"); two state court judges; probation
personnel; and individuals with professional connections to
the domestic abuse program.  They have each moved to

dismiss.[1]  For the reasons set forth below, I recommend that the motions to dismiss be GRANTED, but that Sylvester be granted leave to amend some of his claims.  Failure to file a timely amendment should result in dismissal of the case.

<u>Factual Background</u>

For the limited purpose of ruling on the pending motions to dismiss, the facts alleged in the complaint will be accepted as true.  Sylvester was arrested on September 14, 2005, and was subsequently charged with lewd and lascivious conduct.  On April 17, 2006, the State added a domestic assault charge.  Sylvester pled guilty to both counts and was sentenced to two to six years, all suspended, with probation.

A condition of Sylvester's probation was that he complete the Domestic Abuse Education Program ("DAEP") to the satisfaction of his probation officer.  On June 7, 2006, DAEP coordinator Judy Rickstad allegedly revealed confidential information about Sylvester to a third party. Sylvester complained about Rickstad's conduct to Spectrum Youth and Family Services and to "the Office for Civil

---

[1]Also pending before the Court are two motions for preliminary injunctive relief brought by the plaintiff, and a series of motions, also brought by the plaintiff, pertaining to the parties' compliance with certificate of service requirements.

Rights." (Paper 4 at 4). The incident was also reported to Probation Officer Suzanne Bedard. On July 13, 2006, Sylvester learned that he was being dismissed from the DAEP because Rickstad did not feel he was "being accountable" for his crime. Id. at 5.

Sylvester's dismissal from the DAEP resulted in a violation of probation charge. A hearing on the complaint was scheduled, but Sylvester's original sentencing judge, Judge Mark Keller, recused himself due to a potential conflict. Sylvester alleges that the conflict arose out of the fact that Judge Keller's wife was employed by the company that operated the DAEP.

A merits hearing was later held in front of Judge Ben Joseph. The court found probable cause and Sylvester was convicted on the probation violation charge. Sylvester's probation was revoked, and his underlying sentence imposed. He appealed, and the Vermont Supreme Court affirmed the conviction. State v. Sylvester, 2007 VT 125, 181 Vt. 619 (2007).

Sylvester now argues that his dismissal from the DAEP was retaliatory and violated his due process rights. He contends that notes and records from the program do not

support a finding of unsatisfactory performance, and that absenteeism rules were not consistently enforced. He claims to have had a liberty interest in program participation, and believes that a hearing should have been held prior to his dismissal. (Paper 4 at 7).

After he was incarcerated, Sylvester allegedly suffered from "almost every type of harassment, abuse and mental game playing that one might be able to conceive." Id. at 12. He first claims that he suffered from a severe foot infection. The problem was so serious that the head of "medical" for the Department of Corrections visited him twice, and pictures of his feet were e-mailed to her daily.

Sylvester next alleges that he was subjected to cell searches during which nothing was found and his legal materials were removed. When he complained about one such search, his incoming mail was allegedly delayed for one day. His final claim is that he has been "transferred around the system" and threatened with transport to an out-of-state facility if he complains. For relief, the complaint seeks an order directing the state courts to "review his violation and to correct the Constitutional defects," as well as monetary damages.

Since filing his complaint, Sylvester has moved for a temporary restraining order with respect to the conditions of a recent release from prison. The motion requests, among other things, visitation rights with his children and excusal from further rehabilitative programming until "his legal challenges are exhausted."[2] (Paper 28). He also asks for an order barring one of the attorneys involved in this case from contacting him through his probation officer. (Papers 35 and 40).

## Discussion

The defendants have each moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. On a motion to dismiss, the Court must accept as true the factual allegations in the complaint, and must draw all inferences in the plaintiff's favor. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). To survive dismissal, a complaint must plead enough facts to be plausible on its face. Ruotolo v. City of New York, 514 F.3d 184, 188 (2d

---

[2] Sylvester filed a petition for writ of habeas corpus in this Court on May 5, 2008. The case was dismissed without prejudice for failure to exhaust state court remedies. Sylvester v. Bellizi, File No. 1:08-CV-104. Court records indicate that Sylvester is currently incarcerated and is no longer on release. (Paper 53).

Cir. 2008) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.
Ct. 1955, 1974 (2007)).

I.  <u>Judicial Immunity</u>

Two of the defendants in this case are Judges Mark
Keller and Ben Joseph.  Sylvester alleges that Judge Keller
presided over his plea and initial sentencing without
notifying the parties that his wife worked for DAEP.  After
this fact was revealed, Judge Keller allegedly failed to
allow Sylvester the opportunity to either object to his
sentence or to withdraw his guilty plea.  There is no
allegation against Judge Joseph aside from the fact that he
presided over the violation of probation proceeding and
denied Sylvester's motion to dismiss.

In their motion to dismiss, both judges assert
absolute judicial immunity.  "[J]udicial immunity is an
immunity from suit, not just from ultimate assessment of
damages."  <u>Mireles v. Waco</u>, 502 U.S. 9, 11 (1991).  "The
absolute immunity of a judge applies 'however erroneous the
act may have been, and however injurious in its consequences
it may have proved to the plaintiff.'"  <u>Young v. Selsky</u>, 41
F.3d 47, 51 (2d Cir. 1994) (quoting <u>Cleavinger v. Saxner</u>,

474 U.S. 193, 199-200 (1985) (quoting <u>Bradley v. Fisher</u>, 13 Wall. 335, 347 (1872))).

Judicial immunity is overcome in only two situations. "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." <u>Mireles</u>, 502 U.S. at 11 (citations omitted).

Here, Sylvester accuses Judge Keller of failing to recuse himself. He does not claim that Judge Keller acted outside of his judicial capacity, or in the absence of all jurisdiction. Consequently, while Judge Keller may have presided over a case in which he had a conflict of interest,[3] he is nonetheless protected from suit by the doctrine of judicial immunity. <u>See</u>, <u>e.g.</u>, <u>Haynes v. Schimelman</u>, 2000 WL 502623, at *1 (D. Conn. March 8, 2000) (judge's failure to recuse himself does not deprive him of judicial immunity). The claim against Judge Joseph with respect to his rulings in the violation of probation proceeding is equally barred. I therefore recommend that

---

[3] Judge Keller's motion disputes that there was any such conflict of interest. The Court expresses no opinion on the merit of Sylvester's conflict allegation.

all claims for damages brought against these defendants be DISMISSED.

With respect to any injunctive relief Sylvester may be seeking, 42 U.S.C. § 1983 bars plaintiffs from obtaining such relief from "a judicial officer for an act or omission taken in such officer's judicial capacity , . . . unless a declaratory decree was violated or declaratory relief was unavailable."  Sylvester does not claim that a declaratory decree was violated, and he is not seeking declaratory relief.  Any claim against the judges for injunctive relief should, therefore, be DISMISSED as well.

II.  <u>Heck v. Humphrey</u>

Part of the relief sought by the plaintiff is an order requiring the state court to review his probation violation conviction and to correct any "Constitutional defects."  He is also seeking damages.  In order to grant either form of relief, this Court would need to review the validity of his conviction.

In <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87 (1994), the Supreme Court held that a prisoner may not assert a damages claim where such a claim "attacks the fact or length of the [prisoner's] confinement[,] without first showing that the

conviction or sentence has been reversed or otherwise invalidated." Absent such a showing, a prisoner may only seek relief in federal courts through a petition for habeas corpus. See Jenkins v. Haubert, 179 F.3d 19, 23 (2d Cir. 1999).

Sylvester's direct appeal of his conviction for violation of probation was unsuccessful. He has not shown that, since that time, the conviction was otherwise reversed or invalidated. Any claim for damages based upon an improper state court conviction is therefore barred by Heck, and should be DISMISSED.

III. Eleventh Amendment Immunity

Sylvester is suing various state officials in their official capacities. Specifically, the state defendants include: Attorney General William Sorrell; DOC Commissioner Robert Hofmann; Prison Superintendent Susan Blair; Assistant Superintendent Scott DuBois; Prison Superintendent Brian Bilodeau; Living Unit Supervisor Daniel Davies; Susan Onderwyzer, a DOC administrator; Probation and Parole District Manager Susan Bedard (collectively "state defendants"); and Judges Keller and Joseph. The only injunctive relief requested in the complaint with respect to

these defendants is a review of Sylvester's conviction by the state courts. (Paper 14 at 4). As discussed above, § 1983 bars an injunction upon judicial officers except in circumstances that do not apply here.[4]

As to Sylvester's damages claims, any such claims against the state defendants in their official capacities are barred by the Eleventh Amendment. The Eleventh Amendment prohibits suits for damages brought in federal court against unconsenting states or state officials sued in their official capacities. See Edelman v. Jordan, 415 U.S. 651, 663 (1974). A state may waive its Eleventh Amendment immunity so long as the waiver is unequivocally expressed. Atascadero State Hospital v. Scanlon, 473 U.S. 234 (1985). Additionally, Congress may abrogate the Eleventh Amendment pursuant to Section 5 of the Fourteenth Amendment. Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976).

Courts have long held that 42 U.S.C. § 1983, under which the constitutional claims in this case are brought, does not override Eleventh Amendment immunity. Quern v. Jordan, 440 U.S. 332, 341 (1979). As to the Eleventh

_____

[4] In his opposition memorandum (Paper 54), Sylvester seeks to invoke the injunctive relief exception to Eleventh Amendment immunity set forth in Ex Parte Young, 209 U.S. 123 (1908). Because his request for injunctive relief (review by the state courts) is barred on other grounds, Ex Parte Young has no application here.

Amendment's application to Vermont officials, there is no indication that Congress has abrogated Vermont's sovereign immunity from suit in federal court. Furthermore, Vermont has clearly preserved its sovereign immunity under the Eleventh Amendment. <u>See</u>, <u>e.g.</u>, 12 V.S.A. § 5601(g). Therefore, any constitutional claims for damages brought against the state defendants in their official capacities should be DISMISSED.

IV. <u>Individual Capacity – Personal Involvement</u>

The state defendants also move to dismiss on the ground that, with the exception of defendant Susan Bedard, there are no allegations that any of them were personally involved in the claimed wrongdoing.[5] "It is well settled in this Circuit that personal involvement of a defendant in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994). Absent claims of personal involvement, the Court should find that Sylvester has failed to state a claim under § 1983.

Again with the exception of defendant Bedard, the only conceivable basis for suing the named state defendants would

_____

[5] As discussed above, the complaint alleges that Bedard was given notice of the confidentiality breach by DAEP coordinator Rickstad.

11

be that some of them, such as the DOC Commissioner and prison superintendents, had supervisory responsibilities that somehow linked them to constitutional violations. While "respondeat superior cannot form the basis for a § 1983 claim," Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998), the personal involvement of a supervisory defendant in a § 1983 claim may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. See Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Here, there is no allegation that the state defendants, aside from Bedard, had any direct involvement in

the events in question. Nor is there any indication that they had knowledge of those events. Indeed, the complaint includes only a vague allegation that the DOC was made aware of the alleged breach of confidentiality by Rickstad. (Paper 4 at 4-5). Sylvester does not claim that his treatment was the result of an unlawful DOC policy or custom, or that any defendants failed to adequately supervise DOC employees in a manner that was grossly negligent. In sum, Sylvester fails to allege that the state defendants "knew of the unconstitutional practices and exhibited deliberate indifference by failing to act or failing to supervise subordinates." <u>Nunez v. Goord</u>, 172 F. Supp. 2d 417, 434 (S.D.N.Y. 2001).

As to defendant Bedard, Sylvester's probation officer, the claim is that she was aware of the confidentiality complaint against Judy Rickstad. Bedard was also informed by Rickstad that Sylvester had been dismissed from the DAEP program. Because satisfactory participation in the program was a condition of Sylvester's probation, Bedard recorded the violation and the state court subsequently found probable cause.

There is no claim that Bedard played any role in dismissing Sylvester from the DAEP program.  The complaint instead describes her role as administrative, in that she received the news of Sylvester's termination and processed the violation.  Accordingly, there is no support for a claim of constitutional violations by defendant Bedard, and the claims against her and all other state defendants sued in their individual capacities should be DISMISSED for lack of personal involvement.

V.   Due Process Claim

The defendants further argue that Sylvester's claims are subject to dismissal on the merits.  The allegations in the complaint focus on his termination from the DAEP program, and his treatment while in prison.  The DAEP termination, he claims, violated his right to due process.  Specifically, he contends that he had "a liberty interest in the decision of whether he is removed from the program or not.  This making due process a very necessary and implicit part of the matter of violating and/or dismissing someone."  (Paper 4 at 7).

To succeed on a due process claim under the Fourteenth Amendment, Sylvester must establish (1) that he possessed a

liberty interest and (2) that the defendants deprived him of that interest as a result of insufficient process.  <u>Giano v. Selsky</u>, 238 F.3d 223, 225 (2d Cir. 2001) (citation and quotation omitted).  To determine whether a prisoner has identified a protected liberty interest, the Court must examine whether the State has created such an interest by statute or regulation and whether the alleged deprivation constitutes an atypical and significant hardship.  <u>Sandin v. Connor</u>, 515 U.S. 472, 484 (1995); <u>Iqbal v. Hasty</u>, 490 F.3d 143, 161 (2d Cir. 2007) (quoting <u>Tellier v. Fields</u>, 280 F.3d 69, 80 (2d Cir. 2000)).

Sylvester provides no support for a finding that the State created a liberty interest in DAEP participation. Indeed, the DAEP contract signed by Sylvester stated that his failure to participate to the satisfaction of the group leader or his probation officer would result in his dismissal from the program.  (Paper 4-7 at 1).  Given that DAEP and probation personnel had unbridled discretion with respect to Sylvester's presence in the program, it cannot be argued that he had a liberty interest in program participation.  <u>See Olim v. Wakinekona</u>, 461 U.S. 238, 249 (1983).

To the extent that Sylvester was entitled to due process on his probation violation charge, there is no dispute that he received such process. A hearing was held in front of Judge Joseph, probable cause was found, and that finding was upheld on appeal. I therefore recommend that Sylvester's due process claims be DISMISSED.[6]

VI. Post-Incarceration Claims

After his probation was revoked, Sylvester was incarcerated in various state facilities. During that time, he claims to have been subjected to abuse and harassment. He first alleges that his feet suffered a bacterial infection. Although this allegation may be part of an Eighth Amendment claim, it is not clear how the defendants can be held liable. First, there is no suggestion that the presence of bacteria was due to any specific action by a named defendant. Second, with respect to his medical care, Sylvester claims that he received personal attention from

---

[6] The complaint, generously construed, could also be interpreted as alleging that defendant Rickstad retaliated against him for filing a complaint against her. If Sylvester's complaint constituted protected activity, such conduct is potentially actionable under the First Amendment. Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988). In this case, however, Sylvester is not well-positioned to argue that his dismissal from the DAEP was purely retaliatory, since two witnesses at the probation violation hearing testified that he was not accepting responsibility for his crime. State v. Sylvester, 2007 VT 125, ¶ 4. Furthermore, if this Court were to find that the dismissal was retaliatory, that finding would necessarily undermine the probation violation conviction, thereby violating the Heck rule.

"the head of medical for the D.O.C." and that photos of his feet were e-mailed to her daily. Having alleged this level of care, there is no basis for a claim of deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); Farmer v. Brennan, 511 U.S. 825, 828 (1994).

Sylvester next claims that he was subjected to unnecessary and unwarranted searches of his cell. The Fourth Amendment protection against unreasonable searches "does not apply within the confines of the prison cell." Hudson v. Palmer, 468 U.S. 517, 526 (1984). Prisoners do, however, have an Eighth Amendment right to be free from searches that lack any penological interest and are intended solely to harass the inmate. Lashley v. Wakefield, 367 F. Supp. 2d 461, 470 (W.D.N.Y. 2005).

A fundamental flaw in Sylvester's cell search claim is that he fails to allege any personal or supervisory involvement by the named defendants. He also fails to assert that cell searches once or twice a week were unusual in the prison environment, and that such searches caused him harm. See Lashley, 367 F. Supp. 2d at 471 (citing Hudson v. McMillian, 503 U.S. 1, 7-8 (1992)). Without such

allegations, the Court should find that Sylvester's claim is insufficient under the Eighth Amendment.

As part of his cell search claim, Sylvester contends that his legal materials were confiscated. This allegation could be an attempt to support a First Amendment argument for denial of access to the courts. He may also be setting forth some form of retaliation claim. See <u>Allah v. Greiner</u>, 2007 WL 1280657, at *6 (S.D.N.Y. Apr. 30, 2007) (distinguishing between access to courts claim and retaliation claim under First Amendment). Again, however, he fails to allege any specific conduct by the defendants in this case, or that he was injured by such conduct. Indeed, it is hard to conceive of how the named DOC defendants, most of whom are supervisors, would have any personal involvement in Sylvester's cell searches.[7]

Sylvester's next claim is that he has "been transferred around the system." To the extent that he is bringing a due process claim, he has no liberty interest in being incarcerated in a particular facility. See <u>Olim</u>, 461 U.S. at 245; 28 V.S.A. § 701 (granting DOC Commissioner

---

[7] Although in the introduction to his complaint Sylvester alleges that the defendants acted "in concert" with each other to deprive him of his civil rights, he offers no factual support for a conspiracy claim.

absolute discretion over inmate's place of confinement).  If Sylvester is bringing some other sort of claim under the general heading of harassment or retaliation, his allegations are "utterly unspecific.  [Sylvester] does not detail the 'harassment' he alleges, nor does he allege that anyone took any steps to actually transfer him in response to any protected conduct."  Branch v. Brown, 2003 WL 21730709, at *15 (S.D.N.Y. July 25, 2003).  His claim should, therefore, be DISMISSED.

The complaint's final allegation is that, when Sylvester complained about his cell searches, his mail was delayed for one day.  The Second Circuit has noted that "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation.  Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'"  Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (quoting Cancel v. Goord, 2001 WL 303173, at *6 (S.D.N.Y. Mar. 29, 2001)).  Sylvester's claim falls short of this bar, and again fails to allege any form of harm resulting from the delay in receiving his mail.  Consequently, he has failed to state a claim for damages under § 1983.

VII.  Preliminary Injunction Motions

   For the reasons set forth above, Sylvester has failed
to show either a likelihood of success on the merits of his
underlying claims, or sufficiently serious questions going
to the merits of those claims as to make them fair ground
for litigation.  Moore v. Consolidated Edison Co., 409 F.3d
506, 510 (2d Cir. 2005) (delineating preliminary injunction
standard).  Moreover, Sylvester's requests with respect to
the conditions of his release appear to be moot, as his
recent filings suggest that he has been returned to prison.
I therefore recommend that his preliminary injunction
motions be DENIED.

VIII.  Motions for Compliance

   Although all remaining motions could simply be denied
as moot, it could be argued that Sylvester's motions for
compliance are relevant to the question of whether the
defendants' motions to dismiss are properly before the
Court.  Sylvester's motions contend that counsel for Judges
Keller and Joseph and counsel for the state defendants each
failed to file proper certificates of service.  He also
claims that counsel for the state defendants filed a

discovery certificate without filing the actual discovery item.

In response to these motions, counsel for Judges Keller and Joseph submits that he corrected the certificate of service problem and, on October 8, 2008, served Sylvester with the appropriate papers. Correspondingly, Sylvester has filed an opposition to the defendants' motions to dismiss, including the motion submitted on behalf of the Judge defendants. (Paper 54). Therefore, to the extent that there was a problem, it has been cured and the issue is moot.

As to the state defendants, their certificate of service was properly attached to the end of their motion. (Paper 19 at 21-22). Moreover, Sylvester does not claim that he was never served with the motion. With respect to the issue of a discovery certificate, the rules do not require parties to file with the Court the actual item being produced in discovery. Fed. R. Civ. P. 5(d). Accordingly, the motions to bring the defendants into compliance are DENIED.

IX.  Leave to Amend Complaint

The final question for the Court is whether to allow Sylvester the opportunity to amend his complaint.  The Second Circuit has urged that "when addressing a *pro se* complaint, a district 'court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'"  Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) (quoting Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)).

In this case, some of Sylvester's claims, such as his allegations against state court judges, are plainly frivolous.  Also falling into this category are his claims with respect to dismissal from the DAEP and subsequent probation violation, and his claims seeking damages from state defendants in their official capacities.  Among the claims that are not plainly frivolous are those which, as currently drafted, fail to allege sufficient personal involvement by the state defendants.  Those allegations are limited to Sylvester's post-incarceration claims.

I therefore recommend that, while the Court should DISMISS all claims and GRANT the defendants' motions to

dismiss, it should also allow Sylvester the opportunity to file a motion to amend his complaint. Consistent with Local Rule 15.1, the motion should be accompanied by a draft amended complaint, and the allegations in the amended complaint should be limited to Sylvester's post-incarceration claims.

## Conclusion

For the reasons set forth above, I recommend that the defendants' motions to dismiss (Papers 19, 20, 25 and 26) be GRANTED, and Sylvester's motions for preliminary injunctive relief (Papers 28, 35, and 40) be DENIED. Sylvester's motion to bring the defendants into compliance (Papers 34, 39, and 41) are DENIED.

I also recommend that the Court allow Sylvester the opportunity to file a motion to amend his complaint. Consistent with Local Rule 15.1, the motion should be accompanied by a draft amended complaint, and the allegations in the amended complaint should be limited to Sylvester's post-incarceration claims. The motion to amend should be filed within 30 days of the Court's order on this

Report and Recommendation, and the failure to file a timely motion to amend should result in the dismissal of the case.

Dated at Burlington, in the District of Vermont, this 11th day of February, 2009.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).